SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. HERMANN, OSB #126353**
Nicole.Hermann@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00018-IM** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **EDUARDO SANCHEZ,** | |
| **Defendant.** | |

Defendant comes before the Court for sentencing after pleading guilty to Interstate Communications with a Threat to Injure for leaving six voicemails for his Oregon DHS caseworker threatening to kill her and other employees in the office. The facts of the instant offense combined with defendant's criminal history support the government's recommendation of a sentence of 8 months' imprisonment, the low end of the advisory guidelines range, followed by a three-year term of supervised release and a $100 fee assessment.

## BACKGROUND

### A. The Offense Conduct

In December 2023, defendant, a resident of Ontario, Oregon, was assigned a case worker, Adult Victim (AV1), with the Oregon Department of Justice's Child Support Division pursuant to the opening of an Oregon child support case following a request to modify an out of state child support judgment. PSR ¶ 25 – 26. AV1 worked out of out of the Pendleton, Oregon office of the Oregon Department of Justice and had contact with defendant from December 2023 through November 25, 2024, solely by phone and email. *Id*.

In September 2024, a child support modification order was finalized and entered in the child support case. *Id*. Following the entry of the modified order, defendant frequently called AV1 and left angry messages on AV1's work voicemail. Over time, the calls and messages became angrier and more aggressive. *Id*.

On November 23, 2024, a Saturday, defendant called AV1 and the Pendleton Office's main line, located in Pendleton, Oregon, from his home in Ontario, Oregon. PSR ¶ 21. Defendant made six phone calls leaving a total of six voicemails for AV1 which contained a multitude of threats to shoot, kill, and murder AV1 and other employees of the Oregon Department of Justice. *Id*. The voicemails were discovered and listened to on Monday, November 25, 2024. *Id*.

In the voicemails, defendant made repeated threats of violence against AV1 as well as other employees of the child support division. *Id*. Defendant stated he was going to obtain a firearm and shoot AV1 "in her fucking face." *Id*. He repeatedly stated he would shoot and murder AV1 and "every single one of you," detailing a timeline for when and how he would arrive at the DOJ office and his plan to find and shoot AV1 first before killing the remainder of the employees. *Id*. See also Superseding Indictment paragraphs 1 – 8 at ECF No. 39.

After employees of the Child Services Division recovered the voicemails, AV1 was immediately notified and out of extreme fear for her personal safety, left the workplace and her home and did not return to either for several weeks. PSR ¶ 27. In addition, the entire Pendleton Office of the Department of Justice, including several other state offices housed in the same buildings, were put in lock-down for the rest of the day, offices closed and employees sent home. PSR ¶ 22. Even the following day, government offices were opened with only limited staff and extra security measures, and public facing services were extremely limited. *Id*. Following receipt of the voicemails, defendant was contacted by supervisors of AV1 via email and directed to cease contact with AV1 and communicate with the department via email only. In subsequent December 2024 emails sent by the defendant to those supervisors, defendant acknowledged making the threat and his satisfaction that his threats resulted in the removal of AV1 from his case. See PSR ¶ 24(5).

Defendant was arrested at his home in Ontario, Oregon on December 23, 2024, and during transport into custody made post-*Miranda* admissions to leaving the voicemails, expressing some regret for his actions while also indicating he did not believe the voicemails would be such a big deal. PSR ¶ 28 – 30. Defendant acknowledged that he had been drinking and stated he did not intend to carry out the threats. *Id*.

**B. The Charge and Plea Agreement**

A federal Complaint was issued on December 18, 2024, and the defendant made his first appearance on December 26, 2024. Defendant was released from custody on conditions. On January 15, 2025, a federal grand jury returned a single count Indictment alleging a violation of 18 U.S.C. § 875(c), Interstate Communications with a Threat to Injure. ECF No. 8. On June 10, 2025, a federal grand jury returned a Superseding Indictment for the same offense. ECF No. 39.

On February 17, 2026, the defendant entered a plea of guilty to Count 1 of the Superseding Indictment. ECF No. 66.

### C. Guideline Computations

The government agrees with the computations as outlined in the PSR, with the exception of the application of the victim related adjustment, as described further below. The parties agree that defendant's base offense level pursuant to USSG § 2A6.1(a) is 12. PSR ¶ 40.

The parties further agree that the defendant's threats resulted in a substantial disruption to the Oregon Department of Justice's building and office functions, including to AV1's place of employment, the Office of Child Support, ultimately causing the entire facility campus to close for a full day and re-open on only a limited basis the following day. This significant disruption to multiple government offices, employees, and the services they provide to the public meets the specific offense characteristics outlined in USSG § 2A6.1(b)(4)(A), thus a four-level increase applies. PSR ¶ 41.

The PSR applies a victim related adjustment under USSG § 3A1.2(a)(1)(A)(2), finding that AV1 was a qualifying government officer or employee and the offense of conviction was motivated by her employment status. PSR ¶42. As such, a three-level increase is warranted. *Id*. The PSR further notes that the parties did not, at the time of the plea agreement, apply a victim related adjustment in light of the application of the substantial disruption increase noted above. Upon further review of the PSR and applicable guidelines application notes, the government does not disagree with the PSR determination that a victim-related adjustment applies. However, the plea agreement does not contemplate the application of this guideline provision (ECF No. 64) and in line with the provisions of the plea agreement, the government is not including the 3-level

victim related adjustment increase in the below guidelines calculations and the resulting low-end guidelines recommended sentence.

Defendant's timely guilty plea also demonstrates that he fully admits and accepts responsibility under USSG § 3E1.1 for his unlawful conduct in this case, which is reflected in a three-level adjustment for acceptance of responsibility. PSR ¶ 47 - 48.

Finally, the government recommends an additional two-level reduction in defendant's offense level for the early resolution of his case pursuant to the plea agreement. PSR ¶ 6.

Further, the government agrees with Probation that the defendant scores one criminal history point, placing him in Criminal History Category I. PSR ¶ 54.

In summary, the government made the following calculations in determining the defendant's total offense level:

| **Guideline** | **Government's Position** |
|---|---|
| Base offense level — USSG § 2A6.1(a) | 12 (PSR ¶ 40) |
| Substantial disruption of government functions – USSG § 2A6.1(b)(4)(A) | +4 (PSR ¶ 41) |
| Acceptance of Responsibility— USSG § 3E1.1 | - 3 (PSR ¶ 47-48) |
| 18 U.S.C. § 3553(a) — early resolution | -2 (PSR ¶ 6) |
| **Total Offense Level** | **11** |
| Resulting Guideline Range | 8 - 14 months |

## ARGUMENT

Defendant left six distinct, independently threatening voicemails on a single morning, detailing the specific manner in which he would locate and murder AV1 and her colleagues. The repeated threats of violence, details of obtaining a firearm, the time it would take to arrive at the office, and the order in which he would shoot his targets left no ambiguity as to his intentions. The Oregon DOJ took the threats so seriously that the entire building and offices, covering a vast

number of government and public-facing services, were shut down and in limited functioning for two business days. AV1 described to law enforcement following the incident her extreme fear for her safety and that of her family. She left her place of employment and her home and did not return for weeks on end, not until after the defendant was in custody and monitored on pretrial conditions to ensure he was nowhere near the Pendleton office or surrounding county.

The government recognizes the defendant has minimal criminal history and no prior record of threatening behavior. The defendant acknowledged that his actions were likely impacted by the consumption of alcohol and that he had no intention of carrying out his threats. However, the voracity of his threats, the number of voicemails, and the vitriol with which he repeatedly threatened the lives and safety of AV1, and her colleagues was certainly enough to warrant serious protective action by the DOJ and law enforcement action. And they should warrant a sentence of imprisonment as well.

Additionally, the defendant has struggled while on pre-trial release. Within less than two months of his initial release, the defendant was found in violation for failing to report, using alcohol and marijuana, and failing to submit to drug testing. PSR ¶ 13. A warrant was issued and defendant spent a little over a month in custody before release to the NWRRC. PSR ¶ 14. Ultimately the defendant was allowed to return to his home in Ontario, Oregon at the end of May 2025. PSR ¶ 16. For the next several months, the defendant had periods of compliance on pretrial release, punctuated by use of alcohol and difficulty complying with his alcohol testing requirements. PSR ¶ 17 – 19. From January 2026 through May of this year, defendant was largely in compliance with his release conditions. However, beginning at the end of May, defendant was found in violation for consuming alcohol and additional conditions of release

were put in place. PSR ¶ 20a. As of the scheduled sentencing hearing, defendant is not in compliance with his supervision and has pending release violation allegations.

The government recommends a low-end guideline sentence of 8 months of imprisonment. The recommendation is consistent with the provisions of the plea agreement, which include a downward variance for early resolution, acknowledging defendant's willingness to resolve his case and take accountability. The government believes any additional reduction in a term of imprisonment does not take into account the scope and voracity of defendant's threats, the impact on AV1, nor his conduct on pretrial release. The nature and circumstances of the underlying offense demonstrate to the court that defendant should not be granted any benefit beyond the reductions already provided, and he should be held accountable for his actions. The government's sentencing recommendation is appropriate to hold defendant accountable for his actions, deter him from such continued criminal conduct, and to protect the community.

**CONCLUSION**

Based on the foregoing, the government recommends that the Court impose a sentence of 8 months' imprisonment, followed by three years of supervised release, subject to the mandatory, standard, and special conditions proposed by the Probation Office, and imposition of a $100 statutory special fee assessment.

Dated: August 20, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Nicole M. Hermann*
NICOLE M. HERMANN, OSB #126353
Assistant United States Attorney